1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  JESUS SALAZAR and MATTHEW VALENCIA, | No.  1:15-cv-01758-DAD-SKO |
| 11 | |
| 12          Plaintiffs, | ORDER APPROVING SETTLEMENT OF PAGA CLAIMS |
| 13     v. | |
| 14  SYSCO CENTRAL CALIFORNIA, INC., | (Doc. Nos. 15, 17) |
| 15          Defendant. | |

16

17        On December 2, 2016, the parties filed a joint stipulation for approval of a settlement

18   agreement pursuant to California's Private Attorney General Act ("PAGA").  (Doc. No. 15.)  A

19   hearing on this matter was held January 17, 2017.  Attorney Nicholas Scardigli appeared on

20   behalf of plaintiffs Jesus Salazar and Matthew Valencia, and attorney Aaron M. Rutschman

21   appeared on behalf of defendant Sysco Central California, Inc. ("Sysco").  Having considered the

22   parties' request and heard oral argument, and for the reasons set forth below, the court will grant

23   the request for approval of settlement of plaintiffs' PAGA claims.

24                         **BACKGROUND**

25        Plaintiffs commenced this action on October 13, 2015, in Stanislaus County Superior

26   Court, alleging both individual and representative PAGA claims concerning a number of alleged

27   violations of various employment laws.  (*See* Doc. No. 1.)  Specifically, plaintiffs alleged the

28   following claims as private attorneys general under California's PAGA statute: (1) failure to

1

1    provide rest and meal breaks, (2) failure to pay overtime, (3) failure to pay minimum wage, (4)

2    failure to provide accurate itemized wage statements, (5) failure to maintain accurate itemized

3    wage statements, (6) failure to timely pay wages, and (7) failure to pay all wages due upon

4    termination.  (*See* Doc. Nos. 1-1, 15 at 2.)  On November 19, 2015, defendant Sysco removed the

5    action to this court.  (Doc. No. 1.)

6           On October 27, 2016, after engaging in discovery and mediation, the parties agreed to and

7    executed a settlement agreement covering all of plaintiffs' claims, including their PAGA claims.

8    (*See* Doc. No. 21.)  The settlement agreement provides a total settlement amount of $17,500 for

9    settlement of the PAGA claims.  (*Id.* § 1.F.)  This amount includes a payment of $13,125 (75

10   percent of the total amount) to the California Labor and Workforce Development Agency

11   ("LWDA"), and a payment of the remaining $4,372 (25 percent of the total amount) to the

12   "aggrieved employees" as defined by the settlement agreement.  (*Id.*)  In exchange, defendant is

13   to be released from liability for plaintiffs' PAGA claims.  (*Id.* § 4.)

14                                         **LEGAL STANDARD**

15          In 2003, the California Legislature enacted the Private Attorney General Act, Cal. Lab.

16   Code §§ 2698 et seq., after declaring (i) that adequate financing of labor law enforcement was

17   necessary to achieve maximum compliance; (ii) that staffing levels for state labor law

18   enforcement agencies have declined and were unable to keep up with a growing labor market;

19   (iii) that vigorous assessment and collection of civil penalties provides a meaningful deterrent to

20   unlawful conduct; and (iv) that it was therefore in the public interest to allow aggrieved

21   employees, acting as private attorneys general, to seek and recover civil penalties for Labor Code

22   violations.  2003 Cal. Stat. 6629.  Under PAGA, an "aggrieved employee" may bring an action

23   for civil penalties for labor code violations on behalf of herself and other current or former

24   employees.  Cal. Lab. Code § 2699(a).[1]  A plaintiff suing under PAGA "does so as the proxy or

25   agent of the state's labor law enforcement agencies."  *Arias v. Superior Court*, 46 Cal. 4th 969,

26

27   _____

     [1] An "aggrieved employee" is defined as "any person who was employed by the alleged violator
     and against whom one or more of the alleged violations was committed."  Cal. Lab. Code
28   § 2699(c).

                                                      2

1    986 (2009).  Accordingly, a judgment in a PAGA action "binds all those, *including nonparty*

2    *aggrieved employees*, who would be bound by a judgment in an action brought by the

3    government."  *Id.* (emphasis added); *see also Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.

4    4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an

5    individual or in the public interest, and a private person lacks an independent legal right to bring

6    the action, a person who is not a party but who is represented by the agency is bound by the

7    judgment as though the person were a party.").

8            The PAGA statute imposes a number of limits on litigants.  First, because a PAGA action

9    functions as a "substitute" for an action brought by the state government, a plaintiff suing under

10   PAGA is limited to recovery of civil penalties only, rather than damages available privately

11   through direct or class action claims.  *Id.*  Second, to bring an action under PAGA, an aggrieved

12   employee must first provide written notice to the LWDA as well as to the employer.  Cal. Lab.

13   Code § 2699.3(a)(1).  Third, any civil penalties recovered must be distributed as follows: 75

14   percent to the LWDA, and the remaining 25 percent to the aggrieved employees.  Cal. Lab. Code

15   § 2699(i).

16           Finally, a trial court must "review and approve" any settlement of PAGA claims.  Cal.

17   Lab. Code § 2699(*l*)(2).[2]  This court is unable to find, and the parties have not identified, any

18   published authority identifying the proper standard of review of PAGA settlements to be

19   employed by the court.  In the class action context, where PAGA claims often also appear, a

20   district court must independently determine that a proposed settlement agreement is

21   "fundamentally fair, adequate and reasonable" before granting approval.  *See Officers for Justice*

22   *v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); see

23   also In re Heritage Bond Litigation, 546 F.3d 667, 674-75 (9th Cir. 2008).  However, as the

24   parties rightly point out and as noted above, this is not a class action lawsuit, and PAGA claims

25   are intended to serve a decidedly different purpose—namely to protect the public rather than for

26   the benefit of private parties.  *See Arias*, 46 Cal. 4th at 986.  In one recent district court case, the

27

28   [2] The proposed settlement must also be submitted to the LWDA at the same time it is submitted
     to the court.  *Id.*

3

1   LWDA provided some guidance regarding court approval of PAGA settlements.  *See* California

2   Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement

3   ("LWDA Comments"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul.

4   29, 2016), ECF No. 736 at 2–3.[3]  In that case, where both class action and PAGA claims were

5   covered by a proposed settlement, the LWDA stressed that

6
7
8   when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.
9

10   *Id.*; *see also O'Connor v. Uber Techs., Inc.*, ___ F. Supp. 3d ___, No. 3:13-cv-03826-EMC, 2016

11   WL 4398271, at *17 (N.D. Cal. Aug. 18, 2016) (citing the same with approval).

12       Recognizing the distinct issues presented by class actions, this court is nevertheless

13   persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in

14   evaluating the PAGA-only settlement agreement now before the court.  Accordingly, the court

15   will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the

16   statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and

17   adequate[4] in view of PAGA's public policy goals.[5]

18

19   [3]  *See also id.* at 3 ("The LWDA is not aware any existing case law establishing a specific
benchmark for PAGA settlements, either on their own terms or in relation to the recovery on
20   other claims in the action.").

21   [4]  The court's determination as to fairness, reasonableness, and adequacy may involve a balancing
22   of several factors including but not limited to the following: the strength of plaintiffs' claims; the
risk, expense, complexity, and likely duration of further litigation; the amount offered in
23   settlement; the extent of discovery completed, and the stage of the proceedings; and the
experience and views of counsel.  *See Officers for Justice*, 688 F.2d at 625.
24

25   [5]  In the absence of class claims in this case, the parties suggest that the court should instead adopt
the "genuine and meaningful" standard referenced in the LWDA Comments.  In *O'Connor*,
26   neither the LWDA nor the district court distinguished between the "genuine and meaningful"
standard on the one hand, and "fundamentally fair, reasonable, and adequate" standard on the
27   other.  Moreover, this court has not found and cannot conceive of any articulable definition for
"genuine and meaningful" that would not account for the consideration of factors under the
28   "fundamentally fair, reasonable, and adequate" standard, described above.

1

**DISCUSSION**

2        Here, the proposed settlement of plaintiffs' PAGA claims is appropriate for approval.  In

3   accordance with the statute's requirements, plaintiffs have submitted notices of alleged Labor

4   Code violations to LWDA and defendant prior to bringing this action, and the settlement's terms

5   provide for the appropriate distribution of PAGA-related funds upon court approval.  (*See* Doc.

6   No. 15 ¶¶ 1, 15.)  The parties represent that they arrived at a settlement agreement after mediation

7   and having considered the sharply disputed factual and legal issues involved in the lawsuit, the

8   risks and burdens attending further litigation, and the benefits to be received through compromise

9   and settlement of plaintiffs' claims.  (*Id.* ¶¶ 10–11.)  Moreover, the parties represent that they

10  have provided a copy of their joint stipulation regarding the proposed stipulation to the LWDA.

11  (*Id.* ¶ 16.)

12        The PAGA claims in this action are primarily based on defendant's alleged failure to

13  provide rest and meal breaks.  As plaintiffs' point out, the bulk of their PAGA claims are

14  derivative of the alleged rest and meal break violations.  (*See* Doc. No. 17 at 4.)  Additionally, the

15  aggrieved employees on whose behalf plaintiffs seek relief here are defined as "all non-exempt

16  employees in Sysco's Modesto, California warehouse from October 13, 2014 to [October 27,

17  2016]."  (Doc. No. 21 at 1.)  Having reviewed the parties' submission and the terms of the

18  proposed settlement, the court finds that the settlement amount related to plaintiffs' PAGA claims

19  is fair, reasonable, and adequate in light of the public policy goals of PAGA.

20

**CONCLUSION**

21        For the reasons set forth above, the court is satisfied that the settlement of plaintiffs'

22  PAGA claims is fundamentally fair, reasonable, and adequate in light of the public policies

23  underlying PAGA.  Accordingly,

24        1.  The parties' settlement agreement is approved with respect to plaintiffs' PAGA

25            claims;

26        2.  Plaintiffs are directed to submit a copy of this order to the LWDA within ten days of

27            the date of this order; and

28  /////

1       3.  The court shall retain jurisdiction over this action.  Within sixty days of the date of this

2            order, the parties are directed to file a joint status report regarding the status of the

3            distribution of settlement proceeds to the LWDA.  Upon satisfaction that the

4            appropriate payment has been made to the state, the court will then close this case.

5    IT IS SO ORDERED.

6      Dated:   **February 2, 2017**

7                               UNITED STATES DISTRICT JUDGE